**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INFORMED CONSENT ACTION NETWORK,
2025 Guadalupe Street, Suite 260
Austin, Texas 78705

          Plaintiff,

  -against-

SOCIAL SECURITY ADMINISTRATION,
1100 West High Rise
6401 Security Boulevard
Baltimore, MD 21235

          Defendant.

Civil Action No. 1:23-cv-1466

**COMPLAINT**

Plaintiff Informed Consent Action Network ("**ICAN**" or "**Plaintiff**") brings this action against Defendant Social Security Administration (hereinafter "**SSA**" or "**Defendant**") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("**FOIA**") and 42 U.S.C. § 1306(c), and alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331, and venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

**PARTIES**

2.      Plaintiff ICAN is a not-for-profit organization with an office located at 2025 Guadalupe Street, Suite 260, Austin, Texas 78705.

3.      Defendant SSA is an agency within the Executive Branch of the United States Government. SSA is an agency within the meaning of 5 U.S.C. § 552(f) and has possession, custody, and control of records to which Plaintiff seeks access.

## STATEMENT OF FACTS

4.      Plaintiff's mission is to put the power of scientifically researched health information in the public's hands, thereby increasing the ability of members of the public to be more fully informed when consenting to medical treatments.[1] Part of Plaintiff's work involves investigating and reporting issues surrounding vaccine safety and efficacy.

5.      During the summer of 2022, Plaintiff discovered that, according to data aggregated on Federal Reserve Economic Data ("**FRED**"), an economic research tool used by the St. Louis Federal Reserve Bank, the population of individuals 16 years of age and older with a disability in this country had significantly risen from 29.8 million in January 2021 to 39.2 million in summer 2022,[2] a staggering increase of more than 3 million people in only 1.5 years.

6.      This sudden rise in disability claims was especially concerning and relevant to Plaintiff's work because the rise began shortly after the unprecedented mass vaccination campaign that followed FDA's Emergency Use Authorization for COVID-19 vaccines in December 2020.[3] By June of 2021, this mass vaccination campaign had administered 300 million shots to 65% of

---

[1] *See* https://icandecide.org/.

[2] *See* https://fred.stlouisfed.org/series/LNU00074597.

[3]    *See*https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19; *see also* https://www.fda.gov/news-events/press-announcements/fda-takes-additional-action-fight-against-covid-19-issuing-emergency-use-authorization-second-covid.

adults in the United States.[4] Since then, nearly 600 million shots have been administered to people

five years and older, with at least 78.5% of the U.S. population receiving at least one shot.[5]

      7.      As part of Plaintiff's investigation into this concerning rise in disability claims,

Plaintiff submitted a FOIA request to SSA which was designed to capture the communications of

key personnel in SSA and to reveal whether SSA had identified a connection between the sudden

rise of disability claims and the mass COVID-19 vaccination campaign. If such connection had

been identified, the request was designed to acquire information that would reveal whether relevant

SSA personnel appropriately responded to such critically important information, such as

contacting federal health agencies to report the trends and analysis they discovered.

      8.      On June 23, 2022, Plaintiff submitted a FOIA request to SSA seeking copies of the

following records:

> All emails dated January 1, 2021 through the date of search that:
>
> 1) Were sent or received by any of the following individuals:
>
>> a. Stephan G. Evangelista [Deputy Commissioner, Retirement and Disability Policy][6]
>> b. Dennis R. Foley [Deputy Commissioner for Budget, Finance and Management, Assistant Deputy Commissioner for Human Resources]
>> c. Dawn S. Wiggins [Associate Commissioner, Office of Income Security Programs]
>> d. Natalie T. Lu [Associate Commissioner, Office of Research Evaluation and Statistics]
>> e. John C. Morenz [Associate Commissioner Office of Data Exchange, Policy Publications, and International Negotiations]

---

[4] *See* https://www.whitehouse.gov/briefing-room/statements-releases/2021/06/18/fact-sheet-300-million-shots-in-150- days-the-presidents-covid-19-strategy-is-delivering-for-americans/.

[5] *See* https://www.npr.org/sections/health-shots/2021/01/28/960901166/how-is-the-covid-19-vaccination-campaign-going-in-your-state.

[6] Bracketed information inserted for the Court's convenience.

     f.  Steven M. Rollin[]s[7] [Associate Commissioner Office of Disability Policy]

     g.  Susan B. Wilschke [Associate Commissioner Office of Research, Demonstration and Employment Support]

     h.  Jennifer L. Walker [Assistant Inspector General for Investigations with the Social Security Administration's Office of the Inspector General]

     i.  Kilolo Kijakazi [SSA Commissioner]

and

2)  Contain both of the following Boolean search terms anywhere in the email (subject line, body, attachment, etc.)

     a.  disab*

     b.  vaccin*

(* = all variations of word, i.e., vaccine(s), vaccinated, etc.)

(**Exhibit 101** at 10-11.)

9.     The request asked SSA to "waive any and all fees or charges pursuant to 5 U.S.C. § 552(a)(4)(A)(iii)." It further detailed its status as a representative of the news media, and described how the request would contribute to the public's understanding of the government's vaccine safety programs and efforts to promote vaccine safety. (*See* **Exhibit 101** at 10-14.)

10.    On July 6, 2022, SSA denied Plaintiff's fee waiver stating it "decided not to waive or reduce fees," and that SSA "estimate[d] the cost to provide this information [would be] $33,300.50." (**Exhibit 101** at 16-17.) SSA further stated:

> [SSA] regulation (20 C.F.R. § 402.185(b)) lists factors we consider in analyzing whether disclosure is in the public interest. These factors include:
>
> - how the records pertain to the Federal government's operations or activities,
> - whether disclosure would reveal any meaningful information about government operations or activities not already known to the public,

---

[7] On July 20, 2022, Plaintiff corrected the original misspelling of Steven M. Rollins (*see* footnote 1 in **Exhibit 102**).

- whether the disclosure will advance the general public's understanding as distinguished from a narrow segment of interested persons, and
- whether the contribution to public understanding would be significant.

Your fee waiver request fails to explain with reasonable specificity how the disclosure of the information you requested will meet the above factors, and I have not otherwise found that release of the records requested would meet the abovementioned factors. Accordingly, applying the standards listed above, I cannot waive the fee.

We are charging you fees for your request under section 1106(c) of the Social Security Act (Act) (42 U.S.C. § 1306(c)). Because we have invoked section 1106(c), the FOIA fee provisions in 5 U.S.C. § 552 are not applicable to your request. Section 1106(c) applies notwithstanding FOIA and provides that we charge the full cost for search and reproduction of records when the request is for a purpose not directly related to the administration of a program under the Act. (20 C.F.R. § 402.175(a)). We determined that your request is not directly related to the administration of the Act. Accordingly, we will charge you for the full cost to provide the requested information (42 U.S.C. § 1306(c); 20 C.F.R. § 402.175(a)).

11.    On July 20, 2022, Plaintiff appealed SSA's fee waiver denial. (**Exhibit 101** at 1-8.) Plaintiff's eight-page, single-spaced appeal explained in painstaking detail why each factor described above weighed in favor of granting its fee waiver request.

12.    Furthermore, within that analysis, Plaintiff described how the purpose of the request was directly related to the administration of the Social Security Act. For example, within the section titled "The records pertain to the federal government's operations or activities," the appeal stated in relevant part:

According to data aggregated on FRED, an economic research tool utilized by the St. Louis Federal Reserve Bank, the United States population of individuals with a disability has significantly risen since January 2021 for people 16 years and older.[8] During this time, the number of persons 16 years and older with a disability has

---

[8]*See* https://fred.stlouisfed.org/series/LNU00074597.

increased from 29.8 million to 32.9 million, a staggering increase of nearly 3 million people in a timeframe of only 1.5 years. SSA is responsible for administering the Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) programs which provide assistance to people with disabilities.[9]

With such an alarming increase of Americans with disabilities in the last year and a half, American taxpayers – who fund the SSDI and SSI programs – have a right to know whether government employees tasked with the oversight and administration of these programs are reacting appropriately. Moreover, Americans have the right to know whether the increases in disabilities are linked to any trends that have been noticed and discussed by employees tasked with the oversight and administration of the SSDI and SSI programs. If such trends or patterns have been noticed or identified, Americans have the right to know whether such signals have been forwarded to the appropriate federal health agencies tasked with the oversight of such issues.

*Id.*

13.    On December 23, 2022, Plaintiff received notice from Matthew Ramsey, Executive

Director of the Office of Privacy and Disclosure, that he affirmed SSA's fee waiver denial and

stated in relevant part:

I understand ICAN's mission is to raise public awareness about vaccine safety and that ICAN is concerned that the recent rise of Americans with disabilities "could potentially correlate with the mass vaccination campaign...for COVID-19 vaccines beginning in December 2020." However, you have not explained in your appeal how the records you are requesting will reveal any meaningful information about government operations or activities, nor would the records' contribution to public understanding of the issue you identified be a significant one.

We are charging you fees for your request under section 1106(c) of the Act (42 U.S.C. § 1306(c)) as a non-program request (20 C.F.R. § 402.175). Because we have invoked section 1106, the FOIA fee provisions in 5 U.S.C. § 552 are not applicable to your request. Section 1106 provides that we charge full cost for production of records.

---

[9]*See* https://www.ssa.gov/benefits/disability/.

(**Exhibit 102**.)

14.     SSA's appeal determination affirmed its denial of Plaintiff's fee waiver request, and so Plaintiff has exhausted its administrative remedies and now seeks judicial review.

15.     FOIA authorizes federal agencies to charge a FOIA requester fees sufficient to recover certain costs of processing the FOIA request, *see* 5 U.S.C. § 552(a)(4)(A), however FOIA requires that any fees be limited to "reasonable standard charges for document duplication" when information is requested for non-commercial use and the request is made by an educational or noncommercial scientific institution or a representative of the news media. 5 U.S.C. § 552(a)(4)(A)(ii).

16.     Federal agencies can create their own regulations specifying the schedule of such processing fees and establishing guidelines for determining when such fees should be waived or reduced. *See* 5 U.S.C. § 552(a)(4)(A)(i).  SSA utilizes both federal regulations as well as a statutory provision to establish its guidelines for determining when those fees should be waived or reduced: 20 C.F.R § 402.185(b) ("**Section 402.185(b)**") and 42 U.S.C. § 1306(c) ("**Section 1306(c)**").

17.     Given the discretion afforded the agencies in their determination, the proper standard for judicial review of their denial of a fee waiver is whether that decision was arbitrary, capricious, and abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

18.     The agency "must examine the relevant data and articulate a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citations and quotation marks omitted). "Normally, an agency rule would be arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so

implausible that it could not be . . . the product of agency expertise." *Id*. "The reviewing court should not attempt itself to make up for such deficiencies; [the court] may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id*.

19.     SSA's decision to refuse Plaintiff a waiver or any reduction in fees related to the processing of its FOIA request was arbitrary and capricious. Not only did SSA fail to articulate a legally satisfactory explanation for its action, but it also failed to provide a rational connection between the facts found and the choice made.

**I.     SSA's decision not to waive or reduce fees under Section 402.185(b) was improper**

20.     Under Section 402.185(b), SSA has established guidelines for determining when fees associated with processing a FOIA request should be waived or reduced. This regulation establishes two criteria which form the basis for the agency to waive or reduce fees.[10] First, disclosure of the information sought "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government." 20 C.F.R. § 402.185(a)(1). Second, the information "is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.185(a)(2).

21.     SSA's decision to refuse Plaintiff a waiver or any reduction of fees was not based on the second criteria and the first criteria was improperly adjudicated.

22.     In evaluating the first criteria, Section 402.185(b) outlines four factors that are considered. In SSA's appeal determination, it summarized these factors as the following:

- how the records pertain to the Federal government's operations or activities;
- whether disclosure would reveal any meaningful information about government operations or activities not already known to the public;

---

[10] 20 C.F.R. § 402.185(d): "***Deciding between waiver and reduction.*** If the disclosure passes both tests, we will normally waive fees. However, in some cases we may decide only to reduce the fees. For example, we may do this when disclosure of some but not all of the requested records passes the tests."

- whether the disclosure will advance the general public's understanding as distinguished from a narrow segment of interested persons; and
- whether the contribution to public understanding would be significant.

(**Exhibit 102.**)

23.    In Plaintiff's appeal, it adequately detailed why each factor described above weighed in favor of granting its fee waiver request. (**Exhibit 101** at 1-8.)

24.    Plaintiff's appeal stated in part:

According to data aggregated on FRED, an economic research tool utilized by the St. Louis Federal Reserve Bank, the United States population of individuals with a disability has significantly risen since January 2021 for people 16 years and older.[11] During this time, the number of persons 16 years and older with a disability has increased from 29.8 million to 32.9 million, a staggering increase of nearly 3 million people in a timeframe of only 1.5 years. SSA is responsible for administering the Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) programs which provide assistance to people with disabilities.[12]

With such an alarming increase of Americans with disabilities in the last year and a half, American taxpayers – who fund the SSDI and SSI programs – have a right to know whether government employees tasked with the oversight and administration of these programs are reacting appropriately. Moreover, Americans have the right to know whether the increases in disabilities are linked to any trends that have been noticed and discussed by employees tasked with the oversight and administration of the SSDI and SSI programs. If such trends or patterns have been noticed or identified, Americans have the right to know whether such signals have been forwarded to the appropriate federal health agencies tasked with the oversight of such issues . . .

ICAN's FOIA Request targets the communications of key personnel in SSA who would likely be involved in the oversight and administration of the SSDI and SSI programs. ICAN's FOIA Request seeks all of these individuals' emails that contain two Boolean search terms that would most likely reveal communications

---

[11] *See* https://fred.stlouisfed.org/series/LNU00074597.

[12] *See* https://www.ssa.gov/benefits/disability/.

> regarding any potential links to the mass vaccination campaign and the rise of Americans with disabilities.
>
> From the disclosure of the records sought by ICAN's FOIA Request, Americans will be able to see meaningful information not currently available to the public, such as whether employees in the SSA are appropriately reacting to the sudden and alarming rise of Americans with disabilities. Such appropriate actions could include identifying trends and patterns relating to potential causes of the rise of disabilities, and whether or not proper notice was given to the appropriate supervisors or federal health agencies.

25.    Matthew Ramsey, Executive Director of the Office of Privacy and Disclosure, denied Plaintiff's appeal stating in part:

> [Y]ou have not explained in your appeal how the records you are requesting will reveal any meaningful information about government operations or activities, nor would the records' contribution to public understanding of the issue you identified be a significant one.

26.    Mr. Ramsey's explanation for the agency's action is conclusory and not satisfactorily articulated. Although the agency's appeal determination summarized various points made in Plaintiff's appeal, such summaries conspicuously avoided both the key points detailed in the excerpts above and the totality of the arguments made. (*See* **Exhibit 102**.) Thus, not only did SSA's appeal determination utterly fail to consider important aspects of the problem, its proffered explanation for its decision plainly runs counter to the evidence before the agency.

27.    Similarly, given the detail and concerning subject matter of Plaintiff's appeal and FOIA request, there is clearly not a rational connection between the facts found and the determination SSA made regarding Plaintiff's appeal.  Specifically, SSA did not explain how the requested records would fail to reveal meaningful information about government operation or activities, or how their contribution to the public's understanding would not be significant. *Id*.; (*see* **Exhibit 101** at 1-8; **Exhibit 102**).

28.     Given the administrative record and SSA's regulatory factors established under Section 402.185(b), SSA's decision to neither waive *nor reduce* the $33,300.50 in fees was arbitrary, capricious, and an abuse of discretion or otherwise not in accordance with law.

## II.     SSA unlawfully invoked Section 1306(c)

29.     Defendant also claimed it could charge Plaintiff over $30,000 in fees by improperly invoking 42 U.S.C. § 1306(c) which provides:

> Whenever the Commissioner of Social Security or the Secretary [of the Health and Human Services] determines that a request . . . is made for any other purpose not directly related to the administration of the program or programs under this chapter to which such information relates, such Commissioner or Secretary may require the requester to pay the full cost, as determined by such Commissioner or Secretary, of providing such information.

30.     Plaintiff's request is directly related to the administration of the program and Plaintiff's appeal explained how it is in the totality of arguments section of its appeal.

31.     For example, Plaintiff's appeal highlighted (i) programs directly administered by SSA under the Social Security Act, (ii) concerns over SSA's financial responsibilities regarding its administration of programs under Social Security Act, (iii) SSA's responsibilities to research, analyze, and publish data it obtains through the administration of its programs under the Social Security Act, and (iv) SSA's responsibility to communicate with other agencies within the Executive Branch regarding its research and analysis, as well as interagency policies that effect the administration of its programs under the Social Security Act. (**Exhibit 101** at 4-7.)

32.     Furthermore, the scope of the request was reasonably designed to target the relevant SSA's activities and programs authorized under the Social Security Act as the request specifically

11

targeted SSA personnel involved with the administration, research, oversight, and financial activities involving the Disability Insurance and Supplemental Security Income programs.[13]

33.    As a result, Plaintiff's request primarily targeted individuals involved with the Office of Retirement and Disability Policy ("**ORDP**").[14] According to SSA's website[15], the stated "Mission" of the ORDP includes the following statements that relate to Plaintiff's appeal:

a)  The Office directs and manages the planning, development, issuance, and evaluation of operational policies, standards, and instructions for the Retirement and Survivors Insurance, Disability Insurance, Supplemental Security Income (SSI) program, and other SSA programs.

b)  It explains impacts of reform proposal options to enhance program provisions or solvency.

c)  The Deputy Commissioner . . . is the principal advisor to the Commissioner of Social Security on major policy issues and is responsible for all major activities in the areas of strategic and program policy planning, policy research and evaluation, statistical programs, and overall policy development, analysis and implementation    .    .    .    The    Office produces, presents, supports, and publishes OASDI and SSI program data, statistics, research, analyses, and reports that detail trends and effects of the programs on recipients and potential recipients.

d)  [P]resenting policy proposals and analysis within and outside the Executive Branch . . . It directs formulation of Agency policy regarding related government programs that affect SSA programs and/or operations and negotiates related agreements with other agencies . . . It evaluates the effectiveness of national policies in meeting both short and long-term program goals.

34.    In summary, under the powers delegated by the Social Security Act and articulated on SSA's website, SSA personnel associated with the Disability Insurance and Supplemental

---

[13] *See* ¶ 8 for the FOIA Request.

[14] *See* also SSA's organization chart: https://www.ssa.gov/org/ssachart.pdf.

[15] https://www.ssa.gov/org/orgDCRDP.htm.

Security Income programs have been authorized to promote efforts to maintain the solvency of their programs, to be involved in policy making and national policy evaluation that affect their programs, conduct research and analysis of trends, and to share their research, evaluations, and policy guidance with other relevant agencies in the Executive Branch.

35.     The sudden rise in disability claims – over 3 million people in a timeframe of only 1.5 years – began shortly after the unprecedented mass COVID-19 vaccination campaign, that administered 300 million shots to 65% of adults in the United States by June of 2021. The widespread use of the COVID-19 vaccines was due largely in part to the implementation of vaccine policies and mandates authorized by various entities in the Executive Branch, including federal health agencies. If a connection between the widespread use of COVID-19 vaccines and the sudden increase of disability claims was discovered by SSA personnel, the Social Security Act, in furtherance of the effective administration of its programs, authorizes individuals targeted by Plaintiff's request to act on the information it discovered. Such authorized activities would include promoting efforts to maintain solvency of SSA's programs effected by the massive increase and upward trajectory of disability claims, the promotion of new policy proposals or the evaluation of national policies involving the widespread use of COVID-19 vaccines, furthering research and analysis of the discovered trends, as well sharing such research and evaluations with other relevant agencies in the Executive Branch.

36.     Plaintiff's request was specifically designed to obtain information that would reveal whether such authorized activities – directly related to the administration of SSA programs under the Social Security Act – were ever conducted.

37.     SSA and its Commissioner should reasonably know the scope of its own activities and programs it is authorized to conduct under the Social Security Act. Therefore, when reading

Plaintiff's appeal in its totality, SSA should have reasonably recognized how the request was directly related to programs and activities authorized under the Social Security Act.

38.     SSA's determination to invoke Section 1306(c) because it believed the request was not directly related to activities or programs authorized by the Social Security Act entirely failed to consider important aspects of the problem, it offered an explanation for its decision that runs counter to the evidence before the agency, and was not the product of agency expertise. Thus, its decision was arbitrary, capricious, and abuse of discretion or otherwise not in accordance with law.

39.     SSA's explanation for the agency's action in its appeal determination was conclusory and not satisfactorily articulated. *Id*. SSA's three-page appeal determination is nearly completely focused on the legal analysis of regulation 20 C.F.R. § 402.185(b), and not the statute upon which it rested its decision. SSA's appeal determination only provides four conclusory sentences regarding its articulation of its decision to invoke Section 1306(c). In totality, SSA's explanation to invoke Section 1306(c) stated:

> Upon review of your appeal, I affirm Mr. Sarai's decision to deny your request for a fee waiver and charge you for your request under Section 1106(c) of the Social Security Act . . . We are charging you fees for your request under section 1106(c) of the Act (42 U.S.C. § 1306(c)) as a non-program request (20 C.F.R. § 402.175). Because we have invoked section 1106, the FOIA fee provisions in 5 U.S.C. § 552 are not applicable to your request. Section 1106 provides that we charge full cost for production of records.

(**Exhibit 102**.)

40.     SSA failed to provide any analysis or facts found for its choice to deny the Plaintiff's fee waiver request by invoking Section 1306(c). (**Exhibit 102**). SSA's appeal determination did not even demonstrate that its decision to invoke Section 1306(c) was determined by the Commissioner or the Secretary as the statute indicates. 42 U.S.C. § 1306(c).

41.     SSA's decision to deny Plaintiff's fee waiver by invoking Section 1306(c) was arbitrary, capricious, and abuse of discretion or otherwise not in accordance with law. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

## COUNT I
### Improper denial of Plaintiff's fee waiver request
### (VIOLATION OF FOIA, 5 U.S.C. § 552)

42.     Plaintiff realleges paragraphs 1 through 41 as if fully stated herein.

43.     Defendant wrongfully denied Plaintiff's FOIA fee waiver request.

44.     Defendant is in violation of FOIA.

## COUNT II
### Unlawfully invoked 42 U.S.C. § 1306(c)
### (VIOLATION OF 42 U.S.C. § 1306(c))

45.     Plaintiff realleges paragraphs 1 through 44 as if fully stated herein.

46.     Defendant wrongfully denied Plaintiff's FOIA fee waiver request.

47.     Defendant has unlawfully invoked of 42 U.S.C. § 1306(c);

## REQUESTED RELIEF

WHEREFORE, Plaintiff prays for relief and a judgment against Defendant, as follows:

a.      Declare Defendant improperly denied Plaintiff's FOIA fee waiver request;

b.       Declare Defendant unlawfully invoked 42 U.S.C. § 1306(c);

c.       Declare Plaintiff is entitled to a full fee waiver for its FOIA request;

d.       Order Defendant to immediately process the agency records that Plaintiff requested and to accord the request the place in the processing queue that it would have had but for Defendant's improper denial of Plaintiff's fee waiver request;

e.       Maintain jurisdiction over this matter until Defendant complies with FOIA, and the disclosure laws of 42 U.S.C. § 1306, and all orders of this Court;

f.       Grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(b); and

g.       Grant Plaintiff such other relief as the Court deems just and proper.


Dated: May ___, 2023            SIRI & GLIMSTAD LLP


                                Aaron Siri, DC Bar No. NY0537
Elizabeth A. Brehm, DC Bar No. NY0532
Siri & Glimstad LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
(212) 532-1091
aaron@sirillp.com
ebrehm@sirillp.com

*Counsel for Plaintiff*